The next case for argument 19-2842, Laith Shazi v. William P. Barr, et al. Okay, and that's Mr. Nielsen, correct? Correct, your honor. Good morning. May it please the court, my name is Jason Nielsen. I'm here on behalf of Laith Shazi requesting the court grant petition for review in this matter. As an initial matter, Mr. Shazi was brought into proceedings. He came to the United States in the mid-90s as a result of Operation Pacific Haven. He had previously helped the United States government and military in the first mission in Iraq. He's a native citizen of Iraq. He fought with the United States and was credentialed by the CIA. He has, as a result of his service to the country, burns over the majority part of his body, face, arms, legs, and saw untold horrors on the battlefield. As a result, unfortunately, he now suffers from severe PTSD, which led to eventually, after being given asylum in Guam and transported here to the lower 48, he was given asylum and ended up in a few criminal incidents for which he has now lost his asylee status and now was ordered removed to Iraq. There are two bases on which we contend that this petition for review should be granted. One is on the Immigration Judging Board's erroneous reliance on a matter of GDS, which is a board decision which was eventually reversed by the Ninth Circuit, which has only been relied on by the board. Just let me interrupt you. Has any other circuit addressed this issue? No, Your Honor. Now, these have been around a long time. NAM is 2007 and GGS is 2014, as I recall. Even the Ninth Circuit's case is, what, 16 or 17 or some such year? These have all been around a while. Yes. What's going on? What do you think is going on in this case? It pops up now in 2020, almost 2020. The matter of NAM, yes, has been upheld by all the circuits. The issue with GGS is the mental health aspect, I think, which is a distinguishing factor here, where the board is saying that mental health, it's carving out this exception that mental health cannot be considered by the immigration courts in assessing, looking at the dangerousness under the INA and in particularly serious crime analysis. But it is considering all other aspects of the crime under FRENTESCU. Sorry about that. F-R-E-N-T-S-T-E-S-C-U. There's a list of factors and it's an individualized analysis in each and every single case. But for matter of GGS, it says you can look at everything but the mental health. That's assessed by the courts. Are you familiar with our Marambo case, counsel? Yes, sir. Okay. I don't remember even what was in your brief. Was it in your brief? I believe it was in my 28 GA letter. Oh, okay. Good. Thank you. But regardless, we need to discuss it. What do you think it says about this NAM versus GSS and reconciling them? Well, I relied on, I mean, with Marambo, I mean, I think, well, Marambo, I believe, if I recall correctly, we're looking at whether or not the exhaustion, was that what the exhaustion remedies in the claim before the court, and whether or not the, you know, in his, I was going to refer to Marambo, actually, in the second part under the analysis on the new availability of reviewing whether or not Mr. Shiley has established that he has cat relief after the Supreme Court's decision in Nasrallah, the bar, and whether or not he did file a motion to reopen regarding the new previously unavailable evidence in the board's. Let me approach it a different way with you. If you just read GSS by the BIA, it sounds like NAM is what they're relying on. They cite it all the time. Yeah. They do. Regularly, every paragraph or two. So have they, in effect, reconciled them, and should we then go by GSS? We should go by NAM. I still think the GSS, when you're looking at its exclusion of the mental health issues, it comes to a question on, does that get Chevron deference as well? So are we giving the immigration agency Chevron or Department of Homeland Security Chevron deference over questions of criminal matters, of mental health issues? You know, the procedures in criminal court are significantly different from the immigration procedures before the board. I think it was there was some, you know, there was a Supreme Court case matter of Esquivel-Quintana that came out of the Sixth Circuit. And then the lower that when that was granted, there was a concurrence where I forget which judge in the Sixth Circuit said, but he had a concurrence dissenting in one part saying that the criminal statute shouldn't be given a Chevron deference because or the analysis because, you know, a statute is not a chameleon. It doesn't change from one to the other, whether it's civil or criminal. It doesn't change its meaning. And while, you know, there's I think when the Ninth Circuit said, you know, GGS is not overturned it, it's, you know, there's a number of things that are done in criminal court and procedures that are followed with plea bargaining and burdens of proof and all these, these, these questions that arise that make the proceedings before a criminal court and the proceedings before an immigration court significantly different. And so when you have plea bargaining, et cetera, et cetera, and, for example, even in this case, you know, you have a break in when Mr. Shazi was pleading to what the immigration judge found to be a particularly serious crime where his defense counsel said, basically off, you know, there's an office off the record discussion because he was denying the verbiage that had to be stated. There's an off the record discussion and then he eventually under, you know, very leading questions admitted to what facts were necessary for him to sustain the plea colloquy. So, while, you know, it's just kind of, unfortunately, one of the ways things do with when we have a lot of plea agreements in criminal court. So you're taking out of that, taking the decisions out of that without allowing the immigration judge to then look at the real mental health issue, which of the defendant slash now respondent who's being removed and to what was his mental health. I mean, and then and then that kind of leads into something I also wanted to mention that there's a real a real poison pill, I guess, for an analogy in the immigration judges decision. I think it's that page 25 in the record where she says she's going to give she finds him not credible, a not credible witness, except she does give him credibility with regards to what happened to happen to him in Iraq back in the mid 90s. And then he has blackouts, etc. in throughout his what he describes as blackouts throughout his testimony and camera call things and there's inconsistencies. But she then says she's going to find that the government and the respondent have to have their their burdens of proof are both clear and convincing evidence standards. But in removal proceedings, the department has the bear the initial burden to promote to prove sorry, we remove ability by clear and convincing standard. But the respondent improving relief has burden of proof standard. Therefore, why did did Mr. Shazi put on any expert testimony on mental health or did was all of the testimony from him? All the testimony was from him. What was submitted were were were expert reports that we had obtained. No one. We didn't have any individual individual expert come to testify. No medical records. We did. We had medical records. Well, yeah, there were records from his prior case and his dad. There he was. There were diagnoses of PTSD in the record, I believe. But most and we there were his. Yes, there was criminal records as well from his recent most recent offenses leading up to this. There's some discussion on the record that we provided in it in the proceedings. Discussion on the record in the criminal case that we provided for the proceedings before the immigration judge where the judge is noting you're getting a second chance because of what has happened to you in the past, your diagnoses, your mental health issues that you have to keep working on. So, yes, there were medical records in the in the in the record for the judge to look at. But she started discounting those and kind of went held him to this standard that is not should not have been. He should not have been held to. And just before I get to him in towards my rebuttal time, I just want to touch on this roll up and I guess basically in the in this circuit, there's been, I think, six cases now that have addressed or touched on as Rolla. And I would state that this one is different. This one is different in that there is evidence that was provided to the board after the individual hearing, mostly from April 2000. Nineteen, if I believe. And that evidence is material to the identity documents that we argue he would be tortured upon returning to Iraq and not having because of whether he believes he's not an Iraqi citizen because Saddam Hussein stripped him of his citizenship on TV in Iraq in the 90s. Whether or not that's true. But he would not. There's ample evidence in there about how difficult it would be for him to get an Iraqi identification document. And notice you just entered your rebuttal time. I did. And so on that, I would say that the the requirements under Marambo that he have had exhaustive remedies before the agency have been met. And that the the the respondents cannot sustain are that the factual there would have been the factual finding by the board was inappropriate. And so I'll end there. OK, thank you for your argument. Mr. New. Good morning. May it please the court. My name is Craig Newell, and I'm here on behalf of the attorney general. The court should deny Mr. Shazi's petition for review on all three of its major issues. The first one, which was the majority of this, Mr. Nielsen's discussion is the board's interpretations of the particular serious crime term in the withholding of removal statute. There's actually two interpretations that are being challenged and are at issue, and they are complementary to each other. And so to look at them, we need to first look at the first one, which dates back to a 1987 board decision of matter. That every circuit to have addressed it has deferred to that there's no separate inquiry into the dangerousness of the individual. What the statute requires is to look at whether this person has been convicted of a particularly serious crime, and if he has, then he is therefore considered a danger to the community of the United States. It's an inquiry into only the nature of the criminal actions themselves, the dangerousness of the actions that he committed. We are not looking at the individual and trying to predict the likelihood of future misconduct. And as such, we don't look into personal characteristics such as rehabilitation or other equities. And so with that interpretation in mind, which was reinforced and reiterated in the matter of decision. The board issued the matter of GGS decision, and in that decision, it's not a blanket ban on evidence of one's mental health or mental condition at the time he committed this crime. It is one where the evidence cannot be considered unless it came up in the criminal proceeding itself. This was a reasonable policy choice about an ambiguous term that the attorney general has the discretion to set forth guidelines to have the rule. Well, counsel, let me ask you, just looking at GGS itself right now, a couple of the key sentences that cite just what you talked about say mental health does not relate to the pivotal issue in the serious crime analysis. And then it says circumstances and facts of what happened. And it says that two paragraphs later, it seems to me that that's part of the circumstances and facts of what happened. I see what you're asking, Your Honor. The circumstances and facts that are relevant into this inquiry are those about the the outward actions that the person committed, whether those pose the danger to others. When we're talking about one's mental health at the time he committed that crime, that's an inward looking to what that person was thinking at the time he or she committed his crime. That doesn't change the outward dangerousness. Does it lessen the dangerousness of, say, here is a terroristic threat or in a case of an assault or any other kind of crime? We're looking at the harm or potential harm of the crime. That's what makes it a particularly serious crime or not. It's a mental address. Address the Barambo case. Very well written opinion that cites in a.m. Doesn't cite G.G.S. It's a twenty nineteen case of this court. Right. And it says that all reliable information will be considered. Of course, the conviction records, of course, sentencing information as well as other information outside the confines of the record of conviction. And it quotes in a.m. I don't think it quotes G.G.S. at all. Aren't we the panel bound by that statement? You are bound by by that statement. But in that case, matter of G.G.S. did not come up because no no question about the person's mental condition or mental status at the time of his proceeding. At the time he committed his crime was that issue. What matter of G.G.S. really what it says is the board made a reasonable policy decision. It says, yes, we look at all reliable information about these facts and circumstances and relevant information to that question of whether the crime was dangerous. But mental health evidence is not. They decide the board decided that it is should not be considered reliable or relevant unless the mental health was such a substantive question that it did come up in the criminal courts. The board believed that the criminal courts were in the best position to judge whether that mental health had an effect on, say, the the the intent element of the crime. Or what I think is a better corollary is whether it was raised during sentencing here. Here in immigration court, we're asking the seriousness of this crime. And that's what counsel counsel cases are. Let me interrupt you. Many of these cases are state cases. There's no record of the sentencing. Some sentencings are very casual to the max degree. Some sentences take days and there's no transcript and not required in many state courts. Trust me. Is that any kind of way to run the railroad? As to the railroad in the state. Yeah. Yes. How to run the immigration courts and what the rule is about. Well, we can look at the sentencing information. We can't even tell what it is. Right. The particular serious crime determination, it is the aliens burden to establish that he's not been convicted of one. So he needs to put forth the elephant route, the relevant evidence. But what is I think missing from both the Ninth Circuit's rejection of it? And from Mr. Shazi's argument is that this mental health evidence is pertains to the is inward looking inquiry into into why this person committed the crime. Why he or she acted the way he did at the time. That's not what the inquiry is. The board has consistently said from matter of Francesco to matter of an a.m. to matter of G.G.S. that the inquiry is about the nature of the crime. It's it's outward effects on others. That's what we're looking for. We're using the crime as a proxy to determine this person, whether this person is a danger or not to the community. And this was a reason. Then how would I mean, you're saying that you believe that under G.G.S., the immigration court could look at what happened at a sentencing if, in fact, there was a record for review. Is that what you're saying? Yeah. Yes. How does that comport with what you've just said? Because that's looking inward onto why the person did it and what an appropriate sentence might be based on their intent or motive or psychological. So I'm not really sure how your position of inward versus outward can can comport with this sort of. Oh, but we'll look at it if it's at a sentencing. I think what I'm trying to say is if it was in the sentencing means it will be taken under consideration. The question is, is is then when weighing these factors, does it does it have the did it have the effect of lessening the dangerousness of the actions? In most circumstances, it's not this mental health is being entered to try to mitigate or negate the culpability of one's actions. But it's the actions themselves that we are looking at. So the board left some availability for an inquiry into mental health. It didn't want to make a blanket ban because, as we all know, you can't predict all the possible circumstances where there might be a situation where someone's mental health. But have lessened the dangerousness, the dangerousness that was posed by as I read the IJ and BIA's opinions here, it seems like they felt both the IJ and the board were of the view that they could not look at it at all. Right, Your Honor, because under matter that they applied matter of GGS, which which said that unless it was considered in the criminal court proceedings, which he did not point to it being considered, it wasn't taken into account. And so but what is noticeable from both the board's decision and and matter of GGS is that they they fully acknowledge the alien and GGS and matter of Shazi's argument that that he's saying his mental health condition was I mean, his violent actions were the result of his mental condition. And they both recently came to the conclusion that, yes, that may be true, but that didn't lessen the dangerousness that his actions in this case opposed to the mother of his child in the presence of his child or in any case, the lessons, the dangerousness. Can you can you show me where in GSS it acts like that you could take information or evidence or something from the sentencing and put it in? I like Judge Kelly thought we you'd drawn a bright line here. In matter of GGS, it says that the. That's examples of how the I thought they were saying that's how the criminal justice system would handle it. Where does it say what you're saying that then after it's in the criminal justice system? I realize your burden argument. I get that. But where does it then say that it can be used? I thought they were drawing a bright line. It doesn't matter. It does say this, and I wish I could find the exact. Well. Sorry. It's in on page 345 and 346. It raises it when it comes up, and thus it is that that is that is the time that it would counsel. I don't see it on 345 and 346. I'm looking at it like you are. I just don't see that you're welcome to do a 28 J letter, so we don't spend all our time with you and me looking at. I'm sorry. I think it is actually it is on the very the summation at the very beginning that sums it up on page 339. The second paragraph says we hold that a person's mental health. Is not a factor to be considered in a particularly serious crime analysis and that adjudicators, meaning the agency adjudicators are constrained by how mental health issues were addressed as part of the criminal proceedings being part of the aliens criminal proceedings. So it's not a blanket ban, but they're constrained to it. If it was such was of such a substantive matter, it would have come up in the crowd. And not to argue with the sake of arguing with you, but the first word say a person's mental health is not a factor to be considered. That's that looks like the bright line like Rambo and all these other cases are saying. But on page on page 339 where the board is stating it's holding. It's saying that you're that's what I'm that's why I just put it to you. Counsel. I just quoted you the first part of that a person's mental health is not a factor to be considered particularly serious crime analysis. That's what I quoted to you. That is that seems like the rule. The the rule continues by saying that the adjudicators, meaning the immigration judges in the board are constrained by how these mental health issues were addressed as part of the criminal proceedings. And that's why it discusses all all the times on page 345 where it could come up. But I've taken you into your rebuttal, but we'll be sure and give you two minutes at the end. I'm sorry. I don't need a rebuttal. Your honor. Oh, I'm sorry. That's okay. I was so worried about you. I forgot to watch the vlog. Go ahead. Acting my my up and for rebuttal. And so that that is that is what's going on. But the key to all of this is to remember the mental health evidence. Is is is much more akin to a personal characteristic such as rehabilitation or other equities. The question about a particular serious crime analysis is looking at the nature of those criminal actions themselves, whether those actions, whether those outward actions pose the danger to others. That's what we're looking for, because this particular serious crime determination is being served as a proxy for whether someone's a danger to the community. This is a reasonable policy determination by the attorney general. It was Congress left that that that determination in his hands because the withholding of removal statute. This is really balancing two things. Balancing our requirement to protect to international treaty obligations to protect people have been persecuted. But the other time to protect our own citizens from aliens who who have committed dangerous crimes and should not be allowed to remain in this country. And so for these reasons and the reasons presented in the brief, if there's no further questions, the government asked that the court denied Mr. Shazi's petition for review. Thank you very much for your time. Thank you, counsel, for your argument. We're back to Mr. Nielsen for what's real about. Thank you. And just to add to the discussion you're just having on page three forty five of GGS right here at the top paragraph at the end. It says we conclude that consideration of an alien's mental health as a factor in criminal in the criminal act falls within the province province of the criminal courts and is not a factor to be considered in a particular career. Serious crime analysis. To me, that pretty much sounds like a bright line. And I was there when Judge Masey issued her decision. And I recall that it being pretty. We can't consider this argument. I believe there are objections from the government stating that mental health is not a factor to be considered in that particular serious crime analysis. And as to Judge Kelly asked a question earlier, if any of the mental health issues were in the record that's flipping through on page eight eighty four of the record. There's transcripts from a sentencing regarding that's where they're just having a discussion on the record of Mr. Shazi's mental health and treatment, et cetera, et cetera. So there is mental health issues raised in sentencing. So even assuming there there was no bright line rule, then and taking Mr. Newell's argument, then the court should have considered it because the evidence wasn't there. The court, however, declined to consider Mr. Shazi's mental health in its assessment in the particular serious crime analysis. So either way, the court, the immigration court's decision failed to fully account for the circumstances in that analysis. And so I, however, would would urge the court to find that the bright line rule established in DDS on that top of page three forty five that that is not appropriate. That should not be given deference under Chevron to the board and to the IJ and to the agency in an analyzing this for the multitude of reasons that have been mentioned. Lack of records, lack of record keeping in criminal cases at the state level. Cases get old, get stale back here. We're looking back almost 20 years through his criminal history. And so thank you. And I would urge to grant the court to grant this petition. OK, thank you, counsel, for your argument. Case number 19 dash. Twenty eight. Forty two is decision is is submitted for decision by the court.